KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
MAYA PERELMAN - # 318554
mperelman@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Plaintiff
NETGEAR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| NETGEAR, INC., | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY** |
| ASUSTEK COMPUTER, INC. and ASUS COMPUTER INTERNATIONAL, INC., | |
| Defendants. | |

Plaintiff NETGEAR, Inc. ("Netgear"), through undersigned counsel, alleges as follows against Defendants Asustek Computer, Inc. ("Asustek") and Asus Computer International, Inc. ("Asus Computer") (collectively, "Asus" or "Defendants"), as follows:

## I. INTRODUCTION

1. This lawsuit concerns Defendants' repeated efforts to thwart competition through cheating—specifically, by flouting the power limits on wireless routers set by the Federal Communications Commission ("FCC") and thereby gaining an unfair advantage in the wireless router market. In turn, Defendants' refusal to compete fairly has caused competitors like Netgear to lose sales and existing market share.

2. This is not the first time that Defendants have sought to gain an illegal advantage in the industry. In 2014, the FCC determined that Asustek was falsely reporting the power output of its wireless routers, which exceeded the maximum permitted output power applicable to such devices. A consent decree followed, wherein Asustek agreed, among other things, to bring its devices into compliance with the FCC's requirements, implement comprehensive compliance training programs, submit annual reports certifying its compliance with the FCC's requirements, and pay a fine to the United States Treasury.

3. But despite the consent decree, Defendants were not deterred from engaging in essentially identical transgressions just a few years later. In 2021, Asus introduced a new router – the ASUS GT-AXE11000 – which, again, operates at a higher power than the FCC rules allow. Despite Asus's certification to the FCC that the GT-AXE11000 complies with the FCC's requirements on the output signal strength, these routers in fact produce outputs far in excess of the regulatory limits.

4. By surreptitiously exceeding the regulatory limits, Asus was able to market its routers as being more powerful than those of Netgear, whose own routers are FCC compliant and therefore operate within the legally mandated limits. Indeed, reviewers comparing Netgear and Asus's routers have remarked on such differences, suggesting that the GT-AXE11000 provides more powerful WiFi across a broader range. To the extent this is true, it is possible only because Asus's GT-AXE11000 unlawfully exceeds the FCC's power spectral density limits.

5. As a result of Defendants' unlawful and unfair conduct, Netgear has lost and continues to lose sales to Asus and has been irreparably harmed in its existing market share for premium wireless routers. Netgear has also suffered damage to its reputation with regard to currently available and future generations of wireless routers.

6. The relief sought here is straightforward: Netgear seeks permanent injunctive relief to stop Asus from competing unfairly by selling wireless routers that exceed regulatory limits, and damages to compensate it for sales lost as a result of Asus's cheating.

## II.   PARTIES

7. Plaintiff Netgear is a corporation organized and existing pursuant to the laws of Delaware with its headquarters and principal place of business in San Jose, California. Netgear is an established manufacturer of computer networking equipment and other hardware, including wireless internet routers ("Wireless Routers"). Netgear is, and has been for years, the preeminent domestic manufacturer and distributor of Wireless Routers; as of 2021, it holds a 46% share in the domestic retail market WiFi market. Netgear's Wireless Routers were and are marketed, promoted and sold in interstate commerce throughout the United States.

8. Defendant Asustek is a corporation headquartered in Taipei, Taiwan. Asustek is a manufacturer, marketer and exporter of computer networking hardware including, among other products, Wireless Routers.

9. Defendant Asus Computer is a corporation headquartered in Fremont, California and is a wholly owned subsidiary of Asustek. Asus Computer is an importer, marketer and seller of computer networking hardware including, among other products, Asustek's Wireless Routers.

10. Asus Computer acts as Asustek's agent in California. According to Asustek's annual reports, the three directors of Asus Computer—Samson Hu, Joe Hsieh, and S.Y. Hsu—are none other than the directors of Asustek. Two of these Asustek executives are also listed as the directors of Asus Computer in the latter's most recent Statement of Information filed with the California Secretary of State. Asustek's reports further specify that Asus Computer's "main business activities" are selling Asustek-designed products in North America. Put simply, Asus Computer is the American face of Asustek and provides it with the opportunity for regular contact

with United States customers and a channel for a continuous flow of business into the United States.  And, because the leadership of Asustek is the same as the leadership of Asus Computer, there is undoubtedly ample regular contact between Asus Computer and Asustek, so as to make it reasonably certain that Asustek would be appraised of service of process on Asus Computer. Asus Computer thus constitutes Asustek's general manager in California. *See Halo Elecs., Inc. v. Bel Fuse Inc*., No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *2 (N.D. Cal. June 28, 2010) (subsidiary constituted parent's general manager where it offered parent the advantages of doing business in the state and was of sufficient rank "to make it reasonably certain that parent would be apprised of the service made").

11.     Asustek and Asus Computer are direct competitors of Netgear with regard to sales of Wireless Routers, both in California and throughout the United States.  Asustek's and Asus Computer's Wireless Routers were and are marketed, promoted and sold in interstate commerce throughout the United States.

### III.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

12.     This Court has subject matter jurisdiction over Netgear's Lanham Act claim pursuant to 15 U.S.C. § 1121(a), supplemental jurisdiction over Netgear's state law claims pursuant to 28 U.S.C. § 1367, and jurisdiction over Netgear's declaratory relief claims pursuant to 28 U.S.C. § 1331.

13.     This Court has personal jurisdiction over Defendants because, as alleged herein, they have had continuous and systematic contacts with the State of California, have purposely directed activities at the State of California, and this action arises out of and relates to those activities. As alleged herein, Defendants' conduct occurred in California and, as was known by Asus at all times relevant to this Complaint, Netgear is headquartered in California. Asus likewise knows and knew that Netgear is the primary market share holder and Asus's most prominent competitor with regard to domestic sales of Wireless Routers.

14.     Venue is proper under 28 U.S.C. § 1391 because the claims arose in the City of San Jose, County of Santa Clara.

15. The events at issue in this case arose in the City of San Jose, County of Santa Clara, Netgear's headquarters. Accordingly, the action should be assigned to the San Jose Division as set forth in Civil L.R. 3-2(e).

### IV. FACTUAL ALLEGATIONS

#### A. The FCC's Regulation of Wireless Routers

16. The FCC has longstanding rules governing the marketing, sale, operation and use of Wireless Routers operating in certain frequency bands. These rules, codified in Part 15 of the Code of Federal Regulations, were implemented in part to prevent against interference to critical radio communications.

17. Under Part 15 of the Code of Federal Regulations, Wireless Routers—including those manufactured by Asus and Netgear—must be tested by an FCC-recognized and accredited laboratory and authorized by the FCC before they may be legally marketed, sold, operated or used in the United States under a certification process. This process requires that the manufacturer or seller have the laboratory perform tests on the Wireless Routers to measure the levels of radio frequency energy that the Wireless Routers radiate into the open air, and to confirm that they comply with all of the FCC's requirements, including limits on output signal strength. A description of the measurement facilities of the laboratory where the tests are performed must be filed with the FCC. After the tests have been performed, the applicant for authorization must produce and file with the FCC a report explaining in detail the testing procedures that were followed, test results showing compliance with all pertinent technical standards, and additional information set forth in Part 2 of the FCC's rules, including photographs of the device, a technical description, and user instructions.

18. FCC rules require that all certified transmitters bear two labels: an FCC Identifier ("FCC ID") label and a compliance label. The FCC ID consists of a three-character grantee code assigned permanently to a specific party by the FCC, which serves as an indication to consumers that the transmitter has been authorized by the FCC. The compliance label indicates to consumers that the transmitter was authorized under Part 15 of the FCC's rules, and that it may not cause, nor is it protected from, harmful interference.

4
COMPLAINT
Case No.
1747735

19. Once the report demonstrating compliance with the technical standards has been completed, and the compliance label and FCC ID label have been designed by the applicant, the applicant must file with the FCC a copy of the report together with the application fee.

20. Upon receipt of the application, the FCC's lab reviews the report and may or may not request a sample of the transmitter to test. If the application is complete and accurate, and any tests performed by the FCC's lab confirm that the transmitter is compliant, the FCC will then issue a grant of certification for the particular transmission device. Neither the FCC nor any other governmental or regulatory authority tests transmitters as a matter of course to verify that they comply with FCC regulations or reported test results.

21. The compliance label and the FCC ID label cannot lawfully be attached to any device until a grant of certification has been obtained for the device. Once the FCC has issued the grant of certification, the compliance label and the FCC ID label must be permanently affixed to the device and readily visible to the purchaser at the time of purchase.

22. In addition, the FCC's rules require that the manufacturer or seller obtain the FCC's prior approval before making any power output or antenna changes to the transmitter after the FCC has provided the grant of certification for the device.

**B.  Asus receives FCC certification for the GT-AXE11000 and markets it as FCC-compliant**

23. On July 29, 2020, Asus applied for FCC certification for its new Wireless Router, the ASUS GT-AXE11000, for frequencies ranging from 2412 MHz to 5825 MHz. Asus received certification for its GT-AXE11000 to operate in these frequencies on August 4, 2020.

24. Subsequently, on December 9, 2020, Asus applied for FCC certification for the GT-AXE11000 for frequencies ranging from 6115 to 7095 MHz. As part of its application Asus submitted a report certifying that the router operated within the regulatory power spectral density ("PSD") limits for frequencies in that range, and provided test results indicating that the PSD levels were all below the 5 dBm maximum set forth in 47 C.F.R. § 15.407(a)(5). However, as further alleged below, those represented measurements were either false and fraudulent when

1  made, or ASUS modified the GT-AXE11000 models after the testing was completed without
2  seeking or obtaining prior authorization from the FCC as required by applicable FCC regulations.

3  25. Based on the representations in Asus's application, on December 30, 2020, the
4  FCC granted Asus the requisite equipment authorization for its GT-AXE11000 for frequencies
5  ranging from 6115 to 7095 MHZ, and assigned it FCC ID MSQ-RTAXJF00.

6  26. Asus subsequently affixed a label to its router certifying that the device complies
7  with Part 15 of the FCC rules and that it may not cause harmful interference:

8  27. It also reiterated this certification in its User Manual, stating: "This device
9  complies with Part 15 of the FCC Rules. Operation is subject to the following two conditions: [1]
10 This device may not cause harmful interference; [2] This device must accept any interference
11 received, including interference that may cause undesired operation."

12 28. The GT-AXE11000 is now commercially available to the general public through
13 major retailers such as Amazon, Best Buy, and others.

   C. **The GT-AXE11000 does not comply with FCC requirements**

15 29. Contrary to ASUS's representations to the FCC, its Wireless Routers, including
16 but not limited to the GT-AXE11000 model, produce outputs far in excess of those represented to
17 the FCC, produce outputs that exceed FCC maximum output levels, unlawfully cause interference
18 with adjacent bandwidths—affecting critical public services like public utility operations and
19 emergency and police dispatches—and operate in a manner that has never been accurately
20 reported to the FCC.

21 30. In fact, multiple units of the GT-AXE11000, acquired off-the-shelf in 2021, were
22 tested by certified Test Lab National Technical Systems (NTS) and found to exceed the
23 regulatory limits for power spectral density. The smallest discrepancy for a channel was over 4
24 dB in excess of the 5 dBm limit, with some channels operating at more than 10 dB over the
25 FCC's limit. These large discrepancies cannot be attributed to expected variations resulting from
26 quantity production techniques.

27 31. Asus never alerted the FCC to the fact that it had raised the power of its routers
28 prior to sale—nor, of course, obtained any authorization from the FCC to do so. Indeed, even if it

had applied for such authorization, it could not have received it, because the power output exceeds the permissible limits and has the potential to interfere with critical radio communications. For example, public utilities rely on the 6 GHz band of spectrum for wireless communications to operate critical electric infrastructure. By boosting the power of its router beyond the permissible power limits, Asus's routers could cause disruption to the point-to-point microwave links used by public utilities.

### D. Asus's cheating and false representations harm Netgear

32. Prior to Asus boosting the power output of its Wireless Routers above legal limits, Netgear had obtained a leading share of the Wireless Router market. A sizeable portion of Netgear's market share was comprised of brand-loyal, sophisticated consumers familiar with Netgear's reputation for Wireless Routers of the highest available quality. Many of Netgear's sales were to repeat customers who were familiar with the new WiFi 6E technology, anticipated Netgear's manufacture and release of a WiFi 6E Wireless Router, and intended to purchase Netgear's RAXE500 Wireless Router model when released.

33. However, through the unauthorized sale of Asus's GT-AXE11000, Netgear has already suffered lost sales on its RAXE500 model, which was released a few months after Asus released the GT-AXE11000, and expects such losses to continue. This is because Asus's unauthorized power boost to the GT-AXE11000 has prompted reviewers to proclaim that the latter is more powerful—with faster internet speeds and a broader range—than Netgear's products. For example, one influential tech publication recently compared the performance of the GT-AXE11000 and RAXE500 models, noting that the GT-AXE11000 offered faster internet speed across more devices.[1] Other tech blogs have likewise noted that the GT-AXE11000 was able to sustain higher internet speeds across longer distances.[2]

---

[1] AndroidCentral, "Netgear Nighthawk RAXE500 vs. ROG Rapture GT-AXE110000: Which Wi-Fi 6E router should you buy?" *available at* https://www.androidcentral.com/netgear-nighthawk-raxe500-vs-rog-rapture-Gt-AXE110000 (April 15, 2021).

[2] Gizmodo, "This Is the Best WiFi 6E Router You Can Buy Right Now, If You Must" available at https://gizmodo.com/this-is-the-best-wifi-6e-router-you-can-buy-right-now-1847167799 (June 28, 2021).

34. To the extent this is true, which Netgear neither concedes nor alleges, it is possible only because the GT-AXE11000 is not FCC-compliant and, among other things, exceeds the FCC's established power output limits as alleged hereinabove.

35. As a result of such reviews and word of mouth, Netgear has lost potential customers. Indeed, Netgear's sales data reflects the fact that it has experienced lower than expected sales on its RAXE500 Wireless Router—which competes directly with the GT-AXE11000—as compared to its sales of routers that are not subject to the same unfair competition.

36. On information and belief, had consumers known of the risks associated with the purchase of ASUS's GT-AXE11000—including the fact that these routers can cause harmful interference with other devices in the same band—a substantial portion of them would have purchased Netgear's FCC-compliant RAXE500 instead of Asus's noncompliant GT-AXE11000. Likewise, had consumers known that they would be in possession of a Wireless Router that was not FCC certified and/or FCC compliant, a substantial portion of them would have purchased Netgear's FCC-compliant products in lieu of Asus's unlawful routers.

## COUNT I

## False Advertising Under § 43(a) of the Lanham Act

37. Netgear hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every cause of allegation contained in paragraphs 1 through 36 above.

38. As alleged herein, Asus has falsely stated in advertisements and promotional materials that its GT-AXE11000 model Wireless Routers comply with FCC regulations. These false representations are made in each product's User Guide, which are made available online to the public for the purpose of advertising and promoting Asus's GT-AXE11000 Wireless Routers, prior to purchase, for every potential customer interested in obtaining information about the qualities of these products. Additionally, Asus prints labels on the box for the GT-AXE11000 Wireless Routers with the FCC logo and FCC compliance number and code, falsely representing that these Wireless Routers are FCC compliant.

39. Asus made such false statements willfully, intentionally, with full knowledge of the falsity thereof, and with the intent to deceive and mislead potential purchasers.

40. Asus's acts constitute material false representations of fact in a commercial advertisement or promotion which have deceived or are likely to deceive a substantial segment of the present or potential purchases of Wireless Routers in violation of Section 43(a) of the Lanham Act.

41. Asus has used and, on information and belief, intends to continue to use, these false statements of fact in advertising and promotion in connection with the sale of the GT-AXE11000 Wireless Routers to deceive potential purchasers of Wireless Routers about the quality of these Wireless Routers in order to improperly divert sales of Wireless Routers away from Netgear's FCC compliant Wireless Routers.

42. Asus's false statements in advertising and promotion have caused irreparable harm to Netgear and, absent the issuance of an injunction, will continue to cause irreparable harm to Netgear. Damages will not compensate Netgear for the full extent of the injuries caused by Asus. As such, Netgear has no adequate remedy at law.

43. Netgear is informed and believes, and on that basis alleges, that had the purchasers of the GT-AXE11000 Wireless Routers known that they are unlawful and not FCC compliant, and would therefore interfere with adjacent bands and otherwise cause harmful interference, a substantial portion of these consumers would have purchased Netgear's FCC-compliant products instead. Further, had consumers known that they could not lawfully use the Asus Wireless Routers because they were not FCC certified and are not FCC compliant, a substantial portion of consumers would have purchased Netgear's FCC compliant and FCC certified products rather than risk unlawful use and operation of Asus's non-compliant and uncertified Wireless routers. In fact, had ASUS been truthful and complied with FCC regulations, its GT-AXE11000 Wireless Router would not be on the market because they are unlawful to sell. As such, Asus's false statements have caused great economic harm to Netgear in an amount to be determined at trial.

////

////

# COUNT II

## Tortious Interference With Prospective Business Advantage

44. Netgear hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 43 above.

45. Netgear has an economic relationship with a large group of brand-loyal, tech savvy consumers familiar with Netgear's reputation for designing and manufacturing Wireless Routers of the highest available quality. Many of Netgear's sales of Wireless Routers are repeat customers who anticipated Netgear's manufacture and release of an WiFi 6E Wireless Router of the highest available quality, and who, in fact, intended to purchase Netgear's RAXE500 model Wireless Routers. This existing economic relationship was created by Netgear through a laborious combination of advertising, business planning, quality design and reliable manufacturing over the span of many years. As such, Netgear had a probability of future economic benefit from sales to Netgear's loyal customers, including but not limited to those who intended to purchase Netgear's 6E Wireless Routers when released based upon Netgear's reputation and their prior dealings with the company.

46. At all times relevant hereto, Asus knew of the existence of the existing economic relationship between Netgear and the tech-savvy individuals that comprise Netgear's present and future customers for these products.

47. Asus knowingly, fraudulently, intentionally, and tortiously interfered with Netgear's relationship with its customers by, among other things, designing and manufacturing the GT-AXE11000 Wireless Routers for sale in the United States that are not FCC compliant and fraudulently obtaining FCC certification for these Wireless Routers. As a result, Asus's GT-AXE11000 routers were proclaimed by some reviewers and through word of mouth as being more powerful than Netgear's competing products, and thus potentially providing a broader-reaching range and faster wireless connection under certain circumstances.

48. As a result of ASUS's unlawful and unfair conduct as alleged above, Netgear has lost a large portion of its expected sales and has been irreparably harmed in its existing market share for premium Wireless Routers. Netgear has also suffered damage to its reputation with

regard to currently available Wireless Routers and with regard to future generations of Wireless Routers.  This loss of expected sales and the corresponding drop in market share was caused by Asus's violation of FCC standards and Asus's false representations of compliance as alleged hereinabove.

49. As a proximate result of Asus's tortious activity, Netgear has suffered economic harm in amount to be determined at trial.

### COUNT III

### Unfair Competition Pursuant to California Business and Professions Code § 17200, *et seq.*

50. Netgear hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 49 above.

51. Asus has engaged in unlawful, unfair and fraudulent activities in a deliberate scheme to unfairly compete with Netgear in the sale of Wireless Routers.  Such activities include, but are not limited to, knowingly manufacturing for sale Wireless Routers that are not FCC compliant and falsely advertising and promoting that the GT-AXE11000 Wireless Routers are FCC compliant.

52. Asus's action are forbidden by law, offend established public policy, and unethical, oppressive, unscrupulous, substantially injurious to consumers, constitute false advertising, and are likely to deceive the public.  As such, Asus's actions constitute unfair, unlawful and fraudulent business practices within the meaning of California Business & Professions Code § 17200, *et seq.*

53. As a proximate result of Asus's actions constituting unfair competition, Netgear has suffered injury in fact and economic harm in the form of diverted sales and lost market share.

54. Asus's wrongful conduct has caused and will continue to cause great and irreparable injury to Netgear's business in that Netgear has lost considerable sales, and will continue to lose considerable sales, unless Asus is enjoined from its unlawful, unfair, and fraudulent business practices. Netgear has no adequate remedy at law for the injuries currently being suffered in that Asus will continue to wrongfully manufacture for sale, in California and the rest of the United States, Wireless Routers that are not FCC compliant and will continue to falsely

represent that said Wireless Routers are FCC compliant. Accordingly, Netgear is entitled to a permanent injunction against Asus to enjoin it from such unfair, unlawful and fraudulent business practices.

## COUNT IV

### False Advertising Pursuant to California Business and Professions Code § 17500 *et seq.*

55. Netgear hereby repeats, repleads, and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 54 above.

56. Asus has falsely stated in advertisements and promotional materials that the GT-AXE11000 Wireless Routers are FCC compliant.  This false representation is made in each product's User Guide, which is made available online to the public for the purpose of advertising and promoting these Wireless Routers to every potential customer interested in obtaining information about the qualities of Asus' GT-AXE11000 Wireless Routers.  Additionally, the boxes and other packaging for GT-AXE11000 Wireless Routers display the FCC logo and Asus's FCC compliance numbers and codes, falsely representing that they are FCC compliant.

57. Asus made such statements intentionally, with full knowledge of the falsity of such statements, and with the intent to deceive and mislead the potential purchasers of GT-AXE11000 Wireless Routers.

58. Asus's acts constitute material false representations of facts in a commercial advertisement or promotion which have deceived or are likely to deceive a substantial segment of the present or potential purchasers of Wireless Routers in violation of California Business and Professions Code § 17500, *et seq.*

59. Asus has used and, on information and belief, intends to continue to use, these false statements of fact in connection with the sale of the GT-AXE11000 Wireless Routers to deceive potential purchasers of said Wireless Routers about the quality of the Wireless Routers in order to improperly drive sales away from Netgear and towards Asus.

60. Asus's false statements have caused irreparable harm to Netgear and, absent the issuance of an injunction, will continue to cause irreparable harm to Netgear. Thus, Netgear has no adequate remedy at law.

## COUNT V

### Declaratory Relief

61. Netgear hereby repeats, repleads and incorporates herein by reference as though fully set forth each and every allegation contained in paragraphs 1 through 60 above.

62. As alleged above, Asus is knowingly and intentionally manufacturing Wireless Routers for sale that are not FCC compliant. An actual, present, justiciable controversy exists between Netgear and Asus because Netgear currently sells FCC compliant Wireless Routers that compete in the marketplace with Asus's non-compliant and unlawful GT-AXE11000 Wireless Routers.

63. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq.*, Netgear seeks a judicial declaration that Asus's GT-AXE11000 Wireless Routers are not FCC compliant. This Court is vested with the power to declare and adjudicate the respective rights, duties and obligations of the parties with respect to the issues raised by this claim.

### JURY DEMAND

Netgear requests a trial by jury for each and every one of the above allegations, counts, claims and causes of action that is triable before a jury.

### PRAYER

WHEREFORE, Netgear prays for judgment as follows:

1. That Asus, their agents, employees. successors, assigns, and all those controlled by them or in active concert or participation with them, be permanently enjoined, to the fullest extent of this Court's jurisdiction:

    i) from manufacturing, importing, distributing or selling Wireless Routers in these United States that are not FCC compliant, including, but not necessarily limited to, the GT-AXE-11000 Wireless Routers; and

    ii) From making false claims in advertising or promotion that their Wireless Routers, including but not limited to the GT-AXE11000 model, are FCC compliant.

2. That Asus be ordered to issue a recall of all of their non-compliant Wireless Routers, including but not limited to the GT-AXE11000 model, sold in the United States.

3. That Asus be ordered to pay Netgear restitution and damages equal to all gains. profits, and advantages derived from their unlawful and unfair activity.

4. That Asus be ordered to pay to Netgear treble damages pursuant to 15 U.S.C. § 1117 for willful false advertising in violation of the Lanham Act.

5. That Asus be ordered to pay Netgear prejudgment interest.

6. That Asus be ordered to pay Netgear's costs of suit and attorney fees under § 43(a) of the Lanham Act.

7. That the Court issue a judicial declaration that Asus's Wireless Routers, including but not limited to the GT-AXE11000 model, are not FCC compliant and/or are unlawful to be sold and used in the United States.

8. That the Court grant Netgear such other relief as the Court deems just.

Dated: November 19, 2021

KEKER, VAN NEST & PETERS LLP

By: *s/R. James Slaughter*
R. JAMES SLAUGHTER
R. ADAM LAURIDSEN
MAYA PERELMAN

Attorneys for Plaintiff
NETGEAR, INC.